(92 Misc. Rep. 663)

## In re LESLIE'S ESTATE.

(Surrogate's Court, New York County. December 23, 1915.)

1. WILLS ⟨⟩423—ADMISSION TO PROBATE—CONCLUSIVENESS—JUDGMENT IN REM.

Where, in a proceeding to probate a will, every requirement exacted by law is complied with, all persons required by law to be cited are duly cited, the decree is in every respect regular, and the jurisdiction of the court to render it is complete, a decree admitting the will to probate is one in rem, and binding on all the world.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 911–913; Dec. Dig. ⟨⟩423; Judgment, Cent. Dig. § 1303.]

2. DESCENT AND DISTRIBUTION ⟨⟩14—CONSTRUCTION OF STATUTES.

Decedent Estate Law (Consol. Laws, c. 13) § 91, providing that when an inheritance shall have come to an intestate from a deceased husband or wife, and there be no person entitled to inherit under any other provision of that statute, then real property of such intestate shall descend to the heirs of such deceased husband or wife, and that the persons entitled thereunder to inherit such real property shall be deemed the heirs of such intestate, cannot be supported as an attempt to raise up a new class of heirs at law, as the Legislature is powerless to provide that strangers shall succeed to a person's estate, nor is it operative as a release, since a release can run only to those having legal title, colorable or real, and the rights, if any, of the heirs of the deceased spouse from whom the inheritance came, can only be regarded as a gift from the state under its right of escheat.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 45–49, 56; Dec. Dig. ⟨⟩14.]

3. CONSTITUTIONAL LAW ⟨⟩26—VALIDITY OF STATUTES CONTRARY TO NATURAL RIGHT.

The Legislature cannot enact any law contrary to natural right.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 30; Dec. Dig. ⟨⟩26.]

4. WILLS ⟨⟩229—CONTESTS—PERSONS ENTITLED TO CONTEST—VALIDITY OF WILL.

The heirs of the deceased spouse of an intestate can acquire, by gift from the state under Decedent Estate Law, § 91, no better or different right than the state itself has, and as the state's ultimate right in caducary successions, including escheats, does not entitle it to contest the probate of a will of an heirless person in order to promote its right of escheat, the heirs of the deceased spouse of a decedent, from whom such decedent inherited land, cannot contest the validity of the decedent's will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 550–554; Dec. Dig. ⟨⟩229.]

5. COURTS ⟨⟩200¼—ENFORCEMENT—JURISDICTION OF COURTS.

The title or claim of a deceased husband's heirs to the freehold estates of the wife, inherited from her deceased husband, under Decedent Estate Law, § 91, must be enforced in the Supreme Court, invested with the jurisdiction of the former chancellors, and no power exists in the Surrogate's Court to enforce the gift from the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 476, 477; Dec. Dig. ⟨⟩200¼.]

6. DESCENT AND DISTRIBUTION ⟨⟩71—INHERITABLE BLOOD—RIGHT TO QUESTION.

The heirs of a deceased husband, entitled upon the death of the wife intestate and without heirs to take land inherited by her from the hus-

---

band, cannot be-permitted to assert that the wife has no heirs, because the only parent through whom such heirs could claim was by the law of the country prior to 1861 held in a servile status, as the assertion of a servile status or a status of illegitimacy is not open to every one, and a stranger cannot raise such issue.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 229–236; Dec. Dig. ☞71.]

In the matter of the estate of Mrs. Frank Leslie, deceased. On application by certain parties for leave to come in and contest the validity of the decedent's last will and testament. Application dismissed.

James H. Westcott, of New York City (Alfred B. Cruikshank, of New York City, of counsel), for petitioner Arthur Leslie.

Edgar T. Brackett and Hiram C. Todd, both of Saratoga Springs, for executor Cramer.

Sullivan & Cromwell, of New York City, for executor Cromwell.

Horace E. Parker, of New York City, for residuary Carrie Chapman Catt.

William A. Young, of New York City, for Maynard D. Follin.

George A. Strong, of New York City, for Mrs. Wrenn.

FOWLER, S.   This application by those who are neither heirs at law nor next of kin of Mrs. Leslie for leave to come in and open our decree admitting her will to probate and contest the validity of such last will and testament, disposing of an estate which she held in full property, or, as it is technically termed, in fee simple absolute, is both novel and important. The application depends wholly on a recent statute of this state, to which I shall hereafter refer. No similar statute is to be found among the laws of any of the civilized states of Europe. The statute thus drawn into consideration operates as a dislocation of the frame of the ancient law of English-speaking peoples. It has no parallel outside of some few American states. In considering this statute I have found no precedents of authority to guide me, and therefore I am compelled to invoke the fundamental principles of our jurisprudence in order to determine the rights of the parties claiming under it.

I regret that this is one of the cases where I must resort to arguments and sources of law not depended on by the counsel in the cause, because my conscience imperatively prompts me to find elsewhere than in their briefs and arguments the reasons of my judgment. I say this only in order to relieve counsel from any responsibility in the event that those reasons shall not ultimately commend themselves to the judgment and conscience of those superior to me in authority and in responsibility.

[1] The decree now sought to be opened, probating the last will and testament of Mrs. Leslie, was passed in a proceeding where every requirement exacted by law was complied with. All the persons directed by the law of the land to be cited to attend the proceeding were duly cited. The decree itself was in every respect regular. The jurisdiction of the court to render it was complete. Such a decree is

one in rem, and declared by old and solemn authority, often reiterated, to be binding on all the world, including the petitioners. Bogardus v. Clark, 4 Paige's Ch. 623; Hoyt v. Jackson, 2 Dem. 443, 456; In re Lasak, 131 N. Y. 624, 30 N. E. 112; Heyer v. Burger, 1 Hoff. Ch. 1, 11; Matter of Wood, 55 Hun, 608, 8 N. Y. Supp. 884; Anderson v. Anderson, 112 N. Y. 104, 113, 19 N. E. 427, 2 L. R. A. 175; Matter of Kellum, 50 N. Y. 298; Vanderpoel v. Van Valkenburgh, 6 N. Y. 190, 199; Roderigas v. East River Sav. Inst., 63 N. Y. 460, 20 Am. Rep. 555; Kelly v. West, 80 N. Y. 139, 145; Matter of Killan, 172 N. Y. 547, 564, 65 N. E. 561, 63 L. R. A. 95; Stiles v. Burch, 5 Paige's Ch. 132; Whicker v. Hume, Ho. L. Cas. 124; Concha v. Concha, 11 App. Cas. 541; Pinney v. Pinney, 8 B. & C. 335; Pinney v. Hunt, 6 Ch. Div. 98; Jones, Ev. §§ 609, 610. On such a decree persons, wherever residing, had a right to rely, not only by the settled law of our own country, but by the settled law of the entire civilized world. Purchasers bona fide could acquire titles under such decree, and these titles cannot now be divested, unless all the principles governing decrees in rem are subverted. I regret to notice that it is sometimes said by publicists, and I fear not without some foundation in fact, that in some of the courts of this country we pay too little respect to the solemnity and conclusiveness of decrees in rem. This, if true, tends to belittle us in the courts of nations, known as the public courts.

[2] When we come to resolve a cause of first impression, we should always enquire in limine concerning the status of the actors or petitioners and their title to the relief sought. Every right and title recognized in American courts of justice flows either from the common law, the constitutions of government or from competent statutes. No other title or right is recognized in the courts of this state unless the parties are domiciled elsewhere, or the title, right, or chose in action originated out of this state. This last exception denoted is not applicable here. The promovents now here seeking relief depend solely on the recent statute of this state, to which I have before referred. They derive no support from the common law or from any section of the constitutions of government. They must stand or fall by the act I am about to specify. Chapter 481, Laws of 1901, adding section 290a to chapter 547, Laws of 1896, and now transferred to section 91 of the Decedent Estate Law. This statute is in terms as follows:

"When the inheritance shall have come to the intestate from a deceased husband or wife, as the case may be, and there be no person entitled to inherit under any of the preceding sections, then such real property of such intestate shall descend to the heirs of such deceased husband or wife, as the case may be, and the persons entitled, under the provisions of this section, to inherit such real property, shall be deemed to be the heirs of such intestate."

What does this statute mean? It does not purport to be an amendment to our ancient statute of distributions, making a new class of kindred known to the law as "next of kin." It cannot, I think, be supported as an attempt to raise up a new class of heirs at law. It is an old principle of our common law "that God only, and not man,

can make an heir at law.  Glanvill, VII. 1."  Let us glance, by way
of preliminary illustration, at some of the things the Legislature can-
not do.  In a common-law state of this federation it must be conceded
that there are many things which the Legislature cannot do, although
the Constitution may not expressly prohibit them.  They cannot, for
example, reconstruct a family, at least without the consent of the
family.  They cannot declare that if a man die without surviving him
a lawful wedded wife the women folk found resident in his house
at the time of his decease shall have a title of dower in the order of
their seniority.  The Legislature cannot declare that if a man die
without heirs at law or next of kin then the people in the next house
shall succeed to his estate.  Mr. Leslie's heirs at law are in no different
category, when the state comes to deal with Mrs. Leslie's estates in
fee simple absolute, from the people next door.

[3]  A word more on the nature of the powers of legislation intrust-
ed to American legislature.  It is a principle of American public law
that our Legislatures cannot enact any law contrary to "natural right."
The modern English theory of the omnipotence of Parliament has
no place in our public law.  It had once no place in the common law of
England.  A great English judge, Lord Chief Justice Hobart, in the
reign of James I, in the case of Day v. Savage (Hobart's Reports,
87), said by the common law:

> "Even an act of Parliament made against natural equity, as to make a man
> a judge in his own case, is void in itself, for jura naturæ sunt immutabilia and
> they are leges legum."

This great principle, accurately stated by Lord Justice Hobart, has
disappeared from the law of England in ways I shall not stop to recite.
It fortunately survives in our common and public law.  In this re-
spect our public law continues the better traditions of the law of
English-speaking peoples.  All will admit that an American legisla-
ture could not, for example, re-enact the Herodian decree, that all
infants born within two months before the act should perish.  Nor
can it take away the property of A. and give it to B., although there
is no definitive constitutional restriction which prevents either of
the absurd and improbable acts suggested by way of illustration only.
Of course, all such legislation is prohibited, but only inferentially
or by cross-reference to the rules of the common law.  The applica-
tion of all this extreme hypothesis to this proceeding now in this
court is this:  That no matter the source from which Mrs. Leslie's
estates in fee simple absolute have sprung they became her property
and beyond the control of the Legislature, except in certain very
well settled and limited appropriations for public uses.

I do not in reality ascribe to the Legislature any such fatuity as an
attempt by the act under consideration to raise up a new class of heirs
at law to Mrs. Leslie or to any man or woman dying seised of
real property.  A legislative act must always receive a rational inter-
pretation.  It must be reconciled, if possible, with justice and good
sense.  It is very obvious to me that the real intention of the act
was to provide for some of those numerous cases where the state
acquired, or was about to acquire, for default of heirs ("propter defec-

tum sanguinis" as it is called), escheats or rights of escheat by virtue of its sovereign paramountcy over all ownerless things within its territorial domain. The act in question intended that in that event, and in that event only, the rights of the state should devolve on the class designated in the act. That it was within the power of the Legislature so to enact I shall assume without present inquiry, however open to doubt the point may be under the provisions of the Constitution restricting the disposition of the public wealth. It is unnecessary to restate the familiar principles on which the state's title to escheats without office found rests. It would only prolong this opinion unnecessarily. Nor is it necessary to pursue here the limitations on the power of the Legislature to release its sovereign rights of escheat. That there are limitations on their right to release every lawyer knows. When the state parts with its property, however acquired, it parts with it under the general rules of property. As a release can run only to those having legal title, colorable or real, the act under review is not to be taken to be operative as a release to Mr. Frank Leslie's heirs at law, for that description of persons had no possible claim, colorable or otherwise, to the freehold estates of Mrs. Frank Leslie. In other words, his heirs could not take her estate by release, even if running from the state.

[4] The rights, if any, of the heirs at law of Mr. Frank Leslie to succeed to the estate in fee simple absolute of Mrs. Frank Leslie under the act in question can only be regarded as a gift from the state. If this is accurate, they can acquire by gift from the state no better right or different right than the state itself has to such freehold estates. "Non debeo melioris conditionis esse quam auctor meus a quo jus in me transit" is a maxim, not only of the civil law, but of the common law as well. I believe there is no known exception to the rule of law stated in this maxim. This being so, we must next inquire what rights can the state be held to have intended to confer on the heirs of Mr. Frank Leslie in the separate freehold estates formerly of Mrs. Frank Leslie.

It has never been understood that the ultimate right of the state in what is known as caducary successions, including escheats, entitled it to contest the probate of a will of an heirless person in order to promote its right to escheats. The will of an heirless testator stands free from attack in that quarter. It would be contrary to public policy and to all principles of the common law, nay, contrary to all rights secured to our citizens by our constitutions of government, if the state could promote its caducary succession by a resort of that kind to its own courts of justice. The only remedy of the state for escheats is by way of office found, or its substitute. If the state had itself no right, power, or authority to contest the probate of a will of an alleged heirless man or woman, then under the great maxim already quoted those succeeding to its rights stand in no better position. I therefore hold that the heirs of Mr. Frank Leslie are strangers to this probate proceeding, and that they have no right or title which justifies their present application in this court. This court in the pro-

bate proceeding has obeyed all the mandates of the law, and it has cited to the probate all those persons that the law directed to be cited. It would, in my opinion, be highly irregular and contrary to all precedent and authority to vacate the decree of probate sought to be vacated at the instance of Mr. Frank Leslie's heirs at law, now claiming escheats in succession to the state of New York.

[5] If the title or claim of Mr. Leslie's heirs to the freehold estates of Mrs. Leslie can only be supported as a gift from the state, then this court has no jurisdiction to enforce such gift. To enforce a gift from the state the heirs of Mr. Leslie must have recourse to the great general court of the state, now invested with the jurisdiction of the former chancellors. In an exceptional case that tribunal has complete jurisdiction to grant any relief which the facts justify. No such power exists in this court.

[6] There are several other principles of law which ought, I think, to frustrate this application. The assertion of a servile status, or a status of illegitimacy, is not in law open to every one, and, indeed, after a great lapse of time it is open to no one. The common law of this land is full of adjudications on both these points. If a person had been for several generations a freeman, a private person cannot be heard to assert the contrary in a court of justice. A stranger cannot raise an issue of legitimacy. To permit such assertions is regarded as contrary to public policy. To allow Mr. Leslie's heirs at law to violate these plain principles would be repugnant to justice. It is only in cases where pedigree is directly involved that pedigree evidence is admissible. This is not such a case. Mr. Leslie's heirs at law have no interest in the determination of Mrs. Leslie's heirs at law.

The unwisdom of any other construction of this act than that here accorded to it is exemplified by this case. When the common law said that God only made an heir, it was replete with human and divine wisdom. Such heirs are naturally tender to the memory of ancestors. Their cupidity is bounded by the law of decency and propriety. Not for all the inheritances in the world would a freeman brand his mother or father, for example, as servile. It would be contrary to human experience and human instinct for blood relatives to stain their line. Any other construction of this act than that here accorded to it leads to the contrary actions and excites the worst passions of men.

But I ought not to dispose of this matter without some reference to the merits of the respective contentions of the parties. It is claimed in substance on the part of Mr. Frank Leslie's heirs at law that his widow could have no heirs at law of her own, as the only parent through whom such heirs could claim was by the antebellum law of this country prior to 1861 held in a servile status; all such persons, like many in the Middle Ages, being what is known in the old law as "propertyless persons," and therefore not stocks or stirps of descent. Of course, such a claim seems to us now at this lapse of time a monstrous claim. But even if not monstrous in law, to my mind the evidence purporting to support the claim in this instance is of the most inadequate and nebulous kind. Besides, the claim of Mr.

Leslie's heirs is met on the part of those claiming to be either the heirs at law and the legatees or devisees of Mrs. Leslie with most indignant and to my mind complete denials. In all countries where a servile status exists, or has once existed, the free-born and their descendants are for a long period of time thereafter outraged by charges detracting from their own superior status, or by what they regard as an unjust attempt to include them, being of the higher caste, within the ranks of the servile caste. In view of this well-known fact, if for no other reason, this general indignation is not to be ignored in courts of justice. To my mind the cause of the indignation in this instance furnishes only another argument against a construction which would tend to bring those of alien blood within the description of heirs at law to one dying without heirs of her own blood.

On the merits of the papers presented in this matter it would seem that the origin, life, and memory of the deceased lady are most unjustly attacked. It appears therefrom that all her life she was entirely free from all association with persons once of servile status; that she associated exclusively with persons not of that status, some of them more or less eminent as people of letters or in other walks of life. That she bore no trace whatever of the origin ascribed to her by the heirs at law of her late husband is apparent from the papers before me. The members of the highly respectable Southern family claimed by Mrs. Leslie as her own, and by whom she was claimed, repudiate in substance all such assertions. I must say that on the papers submitted to me the contention of Mr. Leslie's heirs at law in respect of Mrs. Leslie's status is entirely disproved. But for the other reasons already stated the application of Mr. Leslie's heirs at law must be dismissed.