In the Matter of the Estate of SARAH PEER, Deceased.

Surrogate's Court, Wayne County, November 3, 1930.

*W. U. Kreutzer*, for the administrators.

*H. J. Wilson*, for Fred Pringle and others.

*Charles T. Ennis*, special guardian and as attorney for widow and children of George Pringle, deceased.

*John W. Brandt*, for State Tax Commission.

WILLIAMS, S.  Questions are raised as to the distribution of the surplus of this estate.

Sarah Peer died intestate on May 8, 1929.  She left her surviving neither husband, children, representative of a child, nor next of kin.  The estate consisted of a bank deposit of upwards $4,000, and certain household furniture valued at $34.

Mrs. Peer had been twice married.  Her first husband was Richard March Pringle, who died September 22, 1894.  Her second husband was Wallace L. Peer, whom she married January 15, 1896, and who died September 13, 1926.  The first husband, Pringle, had been previously married and left him surviving five children by his first marriage, of whom four, Fred, Daniel, Peter and Edward Pringle, are still living.  One child, George Pringle, died prior to the death of the intestate, leaving a widow and three children.  The second husband left no descendants, and his next of kin are Willard Peer, a brother, and Wallace G. Peer and Katie May Hall, the children of Howard Peer, a deceased brother.

The next of kin of both husbands claim the surplus of this estate.

On behalf of the brother, nephew and niece of the second husband it is asserted that the fund of $4,000 left by Mrs. Peer is in fact realty and passes under the statutes relating to descent of real property.  To sustain this contention it is alleged that Wallace L. Peer and Sarah Peer in 1907 and 1908 took title, as tenants by the entirety, to a farm of thirty acres in the town of Wolcott; that, after the death of the husband, Sarah Peer sold this farm for $3,000, and that such proceeds were a part of the sum of $4,000 standing to the credit of Mrs. Peer in the bank at the time of her death.

These allegations are not sufficiently sustained in the proof, but irrespective of the lack of proof, this contention could not be sustained. Upon the death of Wallace Peer, his surviving wife became the absolute and sole owner of this real estate. She took not by inheritance from her husband, but by virtue of the grant. (*Matter of Klatzl*, 216 N. Y. 83.) She sold this property in December, 1926, about two and one-half years before her death, and converted it into personal property and such it in fact was at her death. (*Ametrano* v. *Downs*, 170 N. Y. 388; *Matter of Sarles*, 111 Misc. 571.) The Statutes of Descent have no application and this fund passes under the Statute of Distribution.

The statute as it stood at the time of intestate's death on May 8, 1929, applies. (*Matter of Storum*, 220 App. Div. 472.) This statute, so far as applicable here, consists of subdivisions 15-a and 16 of section 98 of the Decedent Estate Law, which then read as follows:

" 15-a. If there be no husband or wife surviving and no children, and no representatives of a child, and no next of kin, then the whole surplus shall be allotted to a surviving child of the husband or wife of the deceased, or if there be more than one, it shall be distributed equally among them.

" 16. If there be no husband or wife surviving and no children, and no representatives of a child, and no next of kin, and no child or children of the husband or wife of the deceased, then the whole surplus, including the surplus of any estate not distributed on the first day of May, nineteen hundred and twenty-nine, shall be distributed equally to and among the next of kin of the husband or wife of the deceased, as the case may be, and such next of kin shall be deemed next of kin of the deceased for all the purposes specified in this article or in the surrogate's court act."

Subdivision 15-a was added and subdivision 16 was amended by chapter 489 of the Laws of 1913 and they were apparently intended to waive the rights of the State to claim escheat, or rights of " caducary successions," where there were no blood relatives, in favor of the next of kin of a predeceased husband, and are valid enactments for that purpose. (*Matter of Leslie*, 92 Misc. 663; mod., 175 App. Div. 108.) Subdivision 15-a remained unchanged until the revision of the Decedent Estate Law (Laws of 1929, chap. 229), in effect September 1, 1930, and is now subdivision 15 of section 83. This subdivision provided that if there be no surviving husband or wife or next of kin " then the whole surplus shall be allotted to a surviving child of the husband or wife of the deceased, or if there be more than one, it shall be distributed equally among them." Subdivision 16 then provided that if there were " no child or children of the husband

or wife of the deceased, then the whole surplus shall be distributed equally to and among the next of kin of the husband or wife of the deceased." As originally enacted, subdivision 16 contained a qualifying clause to the effect that "such surplus shall not  *  *  * embrace any personal property except such as was received by the deceased from such husband or wife." This restriction was stricken out by chapter 518 of the Laws of 1929, in effect April 11, 1929. No such restriction as to the source of the property was at any time attached to subdivision 15-a. By this amendment the Legislature further extended the waiver by the State of its rights which, prior to this amendment, was limited to property traceable to the predeceased husband or wife, and by the amendment such waiver was extended to all property, regardless of its source. The source from which decedent acquired the property is now immaterial under either of these subdivisions.

Under its terms, subdivision 16, above quoted, does not operate if the circumstances are such that subdivision 15-a pertains. If there is " a surviving child of the husband," then subdivision 15-a governs and subdivision 16 has no application. In this case it is conceded that there are four surviving children of intestate's first husband and that the second husband had no children.

At this point the next of kin of the second husband contend that the words " the husband " in the statute relate to the last husband; that upon the death of Richard W. Pringle and the remarriage of decedent to Wallace L. Peer, the said Pringle ceased to be a husband and that the word " last " should be inserted in the statute, which should be read as if there be no child or children of the " last " husband of the deceased. I cannot agree to this contention. The word " husband," as here used, necessarily means a predeceased husband. The words " the husband " relate to any person who in his lifetime stood in that relation to the deceased. Concededly Pringle did stand in that relation. The fact that after Pringle's death decedent married Peer cannot blot out the fact that Pringle had been " husband " to decedent. (*Matter of Ray*, 13 Misc. 480.) Both husbands had predeceased her. " The husband " applies to both. If the Legislature, in extending the meaning of the words " next of kin " so as to include the relatives of a deceased husband, had intended to limit the same to those of the " last " husband, it would have so stated. It apparently did not so intend. In waiving the rights of the State, relatives by affinity were added as next of kin to those by consanguinity and the nearest were preferred. (*Matter of Neukirchen*, 186 N. Y. Supp. 240.)

Applying then these provisions as written, the children of Richard M. Pringle take the surplus of this estate. But subdivision 15-a

limits this right to a " surviving " child. The word " child " is here used in its primary sense. (*Matter of Tone*, 186 App. Div. 361; affd., 226 N. Y. 696.) There were four children of the husband " surviving " at the death of Mrs. Peer and these take in equal shares. The children of George Pringle, the fifth child of Richard M. Pringle, who died before Mrs. Peer, take no interest.

A decree may be presented before me on November 11, 1930, at which time allowances will be made and the terms of the decree settled. The decree will settle the accounts of the administrators in accordance with the attached memorandum and will provide for the payment of the transfer tax.