No. 30,159.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Appellee,* v. H. S. RECTOR, Executor of the Last Will of Elisha Chance, Deceased, et al., *Appellants.*

(8 P. 2d 323.)

Opinion filed March 5, 1932.

*R. D. Armstrong,* of Scott City, *Clyde Campbell, Martin C. Molholm* and *Merritt D. Vondy,* all of Denver, Colo., for the appellants.

*Roland Boynton,* attorney-general, *W. C. Ralston,* assistant attorney-general, and *H. A. Russell,* of Topeka, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action by the state of Kansas to contest a will which had been subjected to probate proceedings in the probate and district courts of Scott county.

Briefly the facts were these:

On May 5, 1926, the late Elisha Chance, of Scott county, died without known heirs. He left a considerable estate. H. S. Rector, a local banker, who had been his friend and confidant, was appointed administrator. About a year before Chance's death he had shown Rector a will. Rector testified:

"In the spring of 1925 . . . I had a conversation with him in my office in the First National Bank. He took a paper from his pocket, asked me to look at it and see what I thought of it. I opened the paper, saw it was his will and read it. . . . After I read the will and gave him my opinion he returned it to his pocket and I have never seen it since."

After the death of Chance, Rector as administrator searched diligently and repeatedly among Chance's papers and effects, but no will was discovered.

On March 10, 1927, one Martha Ella Cattron, of Denver, a sister of the wife of Chance, who had died before he did, offered for probate an instrument which purported to be a copy of the will which Chance had shown to Rector in his lifetime. She prayed that it be probated as the lost, spoliated or destroyed will of Chance. Her petition was denied by the probate court, but on appeal the district court reversed that judgment and ordered the will admitted to probate.

Pursuant thereto the copy of the supposedly lost, spoliated or destroyed will was probated. By its terms there was a bequest of $2,000 in favor of Martha Ella Cattron, a bequest of $1,000 in favor of her sister, Louisa Hollenbeck, and the net residue was devised to Mrs. Viola J. Winkler and Miss Ersie B. Cattron, of Denver, both daughters of Martha and described in the will as the "beloved nieces" of the testator.

Rector was named in the will as executor and he defended this action in that capacity.

The state's petition narrated all the material facts and alleged that Chance had died a widower, intestate, without issue, and with no living heirs at law. It prayed that the purported will should be adjudged null and void and that the estate be administered in accordance with law.

Defendant's demurrer to the state's petition was overruled, and defendant answered joining issue on the main facts alleged by plaintiff.

To shorten the trial, the state's attorney conceded that if Chance did leave a will the one already probated by order of the district court should be considered as authentic and its contents as established. It was the state's announced theory that this will had been destroyed by Chance himself before his death. The position of defendant was that all matters relied upon by plaintiff to contest the will had been considered when the district court had heard and decided the appeal from the probate court's refusal to admit the will to probate.

Over defendant's objections the cause proceeded with the introduction of plaintiff's evidence. This consisted of oral testimony, a deposition, and the pertinent files of the probate and district courts. Defendant's demurrer to this evidence was overruled, and he offered testimony of various witnesses, including that of the county attorney, who testified that he had been officially aware of the proceedings to probate the lost, spoliated or destroyed will of Chance, and had attended the hearings in the probate and district courts and was familiar therewith, but he had received no notice or request from the county superintendent or state superintendent of public instruction concerning the matter, and so determined for himself that no official action on his part was necessary and he took no action.

The trial court made the following findings of fact:

"I. On or about March 2, 1925, Elisha Chance made and executed the will which is the subject of this action and a copy of which is set out as an exhibit in the petition of the plaintiff, and which was the one exposed by Mr. Chance to H. S. Rector a short time subsequent to its execution.

"II. The will mentioned in finding I has not been found since the death of Mr. Chance, and has not been seen by anyone since it was exhibited to Mr. Rector by Mr. Chance as stated in finding I.

"III. Elisha Chance revoked the said will some time in the fall or latter part of the year 1925 by destroying the same.

"IV. Elisha Chance departed this life May 5, 1926."

Judgment for the state was entered accordingly. Defendant appeals and assigns certain errors:

First, it is contended that the state was not a proper party plaintiff and did not have sufficient interest in the estate to maintain an action.

This contention cannot be sustained. The estates of persons who die without heir or will inure to the state and become the common property of the state for the benefit of its permanent school fund. (Const. art. 6, § 3.) The fact that the statute, R. S. 22-933, confers power upon the county superintendent of public instruction to lay claim on behalf of the state to intestate estates of persons dying without heirs is not the exclusive mode by which the state may lay claim to its own. Neither need the state wait until the county superintendent or state superintendent bestirs himself to call the county attorney's attention to the state's interest in the estate, notwithstanding it is the duty of these officers to be concerned about such matters. (R. S. 22-1201.) The statute makes it the duty of the attorney-general to protect the interests of the common schools, and the preservation of the permanent school fund and everything which rightfully belongs to it is a matter of vital interest to the common schools. Such power and duty are conferred by express statute (R. S. 22-1206) and by his general statutory grant of authority (R. S. 75-702) as well as by the common-law powers inherent in his office. (*State v. Finch*, 128 Kan. 665, 280 Pac. 910; 6 C. J. 812.)

And not only has the state a right to maintain the action for the protection of the interests of the school fund, but has the right to maintain it as *parens patriæ* for the protection of the interests of any possible unknown heir who may yet appear. The benevolent justice of our Kansas law on this subject provides that even if a rightful heir shall appear and establish his claim to the estate at any time within twenty-one years, the state will deliver to him the net proceeds of it which has come into the hands of the state treasurer. (R. S. 22-935.)

It is contended that the state has failed to show that there are no heirs of Elisha Chance. A witness for the state testified to the diligent but unsuccessful inquiry that had been made to discover heirs of Chance. The fact that hitherto no heirs have yet appeared is an evidentiary circumstance. So, too, is the fact that at one time he had made a will without even mentioning any kinsfolk of his own. These considerations will not permit this court to hold that the trial court's finding on this matter is not sustained by evidence. That, however, was not the paramount point in this lawsuit. The vital matter was whether the state maintained the burden of showing that Chance had revoked the will he exhibited to Rector a year

before his death. The trial court so found, and its conclusion thereon is binding on appeal if there was evidence to sustain it. On that score there is little room for debate. There was evidence that after he had made the will shown to Rector, Chance had become deeply offended because Mrs. Cattron had suggested or insinuated that he would do well to marry a girl who helped about the house. To that remark Chance replied, "Just the very idea is an insult," and according to this testimony Chance speedily left the Cattron home in Denver, and said that they should never have any of his property. Moreover, the fact that no will was found by defendant, who was most diligent in his search for it, is not without its evidentiary significance. Counsel for defendant direct our attention to the fact that at one time a motion and intervening petition had been filed in this case on behalf of two persons who claimed to be relatives of Chance. These mysterious persons dropped out of the lawsuit under circumstances which justified an inference that their claim was spurious, or that they themselves were fictitious persons, and that the intervening petition was merely a ruse to muddy the issues.

Counsel for plaintiff remind us that the probate of a will establishes its *prima facie* validity. True enough, and if proceedings to contest the will are not timely begun, such admission to probate gives full authority for an administrator or executor to proceed to administer the estate under its terms, under the supervision of the probate court. But here the action to contest the will was timely begun. The state maintained the burden of the action, so the will falls, and the judgment of the district court contains no error.

That judgment is therefore affirmed.

SMITH, J., not sitting.