## WARREN v. SIDNEY'S ESTATE et al.

(Division B. Dec. 5, 1938. Suggestion of Error Overruled Jan. 2, 1939.)

[184 So. 806. No. 33442.]

Ruth Campbell, of Yazoo City, for appellant.

**Barbour & Henry,** of Yazoo City, for appellee.

Anderson, J., delivered the opinion of the court.

The Chancellor in his opinion, made part of the record, embodied his findings of fact and conclusions of law. We are of the opinion that his findings of fact were amply justified by the evidence, and his conclusions of law are the correct governing principles. We do not think we could do better than to adopt his opinion as the opinion of the Court. It follows:

This is a proceeding to establish a lost or destroyed will alleged to have been executed by Mary Sidney, deceased, in her lifetime and attested by J. W. Isabel and Lonnie Banks as witnesses. R. D. Warren, Sheriff of Yazoo County, as public escheator, under the authority of Chapter 27, Code of 1930, section 1511 et seq., instituted a contest of the will on the grounds that it was not properly executed and that Mary Sidney did not have testamentary capacity at the time of the alleged execution of the will.

The first question presented is whether or not the state has a right to contest the probate of a will. It seems to be settled by the weight of authority that the state, both in view of its rights under escheat to the property of intestates who die without heirs, and as parens patriae for the protection of the interests of any possible unknown heir who might appear, may bring suit to contest a probated will. 68 C. J., sec. 671, page 928, citing State v. Rector, 134 Kan. 685, 8 P. (2d) 323; State v. Nieuwenhuis, 43 S. D. 199, 178 N. W. 976; contra In re Leslie's Estate, 92 Misc. 663, 156 N. Y. S. 346, 350, affirmed 175 App. Div. 108, 161 N. Y. S. 790. So far as known, Mary Sidney left no heirs at law.

The burden of proof as to the validity of a will is on the proponents thereof throughout the contest of the same. Brown v. Walker (Miss.), 11 So. 724; Isom v. Canedy, 128 Miss. 64, 88 So. 485. And this burden of proof extends to (1) the proof of the existence and proper execution of the will, (2) to the evidence of its loss or

destruction, and (3) to the proof of its contents, but it is well settled that when the contents of a will lost or improperly destroyed without the knowledge of the testator are satisfactorily proved by witnesses, it will be established as the will; but the policy of the law requires such contents to be established by the clearest, most convincing and satisfactory proof. Vining v. Hall, 40 Miss. 83.

Section 1602 of the Code of 1930 provides:

"The due execution of the will must be proved by at least one of the subscribing witnesses, if alive and resident in the state, and competent to testify; but if none of the subscribing witnesses can be produced to prove the execution of the will, it may be established by proving the handwriting of a testator, and of the subscribing witnesses to the will, or of some of them."

Secondary evidence cannot be used to prove due execution of a will if the subscribing witnesses will and can prove the facts, until they have been called or produced. Helm v. Sheeks, 116 Miss. 726, 77 So. 820. But proof of the due execution of the will may, if necessary, be made by others than subscribing witnesses, although subscribing witnesses must be produced, if possible. Tyson v. Utterback, 154 Miss. 381, 122 So. 496, 63 A. L. R. 1188.

J. W. Isabel testified that, with the aid of a business guide and a dictionary, he drafted the will for Mary Sidney according to her directions and at her special request. He states that Mary Sidney told him she wanted to draw up a will so that if she died at any time Durwood Collins, whom she had raised from a child, would get everything, because it had been understood between her and her dead husband that the property should go in this manner after her death. He testified that Mary Sidney signed the will, and that he and Lonnie Banks signed as attesting witnesses in the presence of Mary Sidney and in the presence of each other. Mary Sidney could not write, but she signed by her mark, made by

the witness J. W. Isabel. The witness stated further that Mary Sidney was at the time more than 21 years of age and of sound and disposing memory. The other attesting witness to the will, Lonnie Banks, testified that he did not remember signing as an attesting witness or being present at the execution of the will, and that, according to his recollection, he had never attested the will and was not present when it was executed. J. W. Isabel further testified that Mary Sidney requested him to prepare two copies of the will and then mail the original will to the Rankin County Bank at Brandon. He stated that the copies prepared by him were true, correct and exact copies of the original will, and that said copies were made sometime after the execution of the original will. Mary Sidney instructed him to mail the original of the will to the Rankin County Bank at Brandon and to mail a copy of the will to Durwood Collins in Washington, D. C., and to deliver the other copy to her for her keeping. He undertook to comply with these instructions and mailed a copy to Durwood Collins and thought he was mailing the original of the will to the Bank at Brandon. It was his intention and Mary Sidney's intention to deliver the other copy to Mary Sidney for her keeping.

However, after the death of Mary Sidney, it developed that Isabel had sent a copy of the will to the Bank at Brandon and a copy of the will to Durwood Collins and had evidently delivered the original will to Mary Sidney. After the death of Mary Sidney a thorough search was made by witnesses through the papers and belongings of Mary Sidney, but no will was found among her papers. The copy of the will procured from the Bank at Brandon, and supported by the proof of its execution and the competency of the testator at the time of the execution by the attesting witness, Isabel, has been offered in evidence. The question is whether or not the proponent has met the burden of proof and has established by the clearest, most conclusive and satisfactory proof that the

will was properly executed and was in existence or believed to be in existence by Mary Sidney at the time of her death; that the original will has been lost and that the copy of the will offered in evidence is a true copy of the will executed by Mary Sidney.

Section 1602 of the Code of 1930, as set out above, does not require that the execution of the will be proved by more than one of the subscribing witnesses, and this has been done by the witness, Isabel. In the case of Crusoe v. Butler, 36 Miss. 150, the court used this language:

"When it appears from the face of a will that there are three subscribing witnesses, it may be proven by one witness so as to authorize its probate to pass realty, if the witness examined prove that it was duly attested by the others. . . . If the record of the probate . . . state that 'it was duly proven by one of the witnesses, and admitted to probate,' and it does not affirmatively appear that that witness proved only the attestation by himself and execution in his presence, it will be presumed . . . that the witness testified to every fact necessary to the due execution."

The witness, Isabel, testified to every fact necessary to the due execution of the will by Mary Sidney. The only difficulty is that the other attesting witness, Lonnie Banks, testifies that he did not sign the instrument as an attesting witness and was not present at its execution. The copy offered in evidence, of course, does not contain the original signature of Lonnie Banks and it is consequently impossible to offer proof as to his signature. It is quite possible that his memory as to the transaction has failed him and that if the original will were available he would recognize the genuineness of his signature upon it as an attesting witness.

It is not the policy of the law to permit the defeat of the probate of a will because of the failure of the memory of an attesting witness. The right of a testator to make a will and devise his property as he pleases should not, in the execution of that right and the vesting of the

property according to the desire of the testator, be conditioned upon any such fact that might so easily thwart and evade all of the intentions and purposes of the testator in regard to his property, and this, regardless of his thorough compliance in fact with the statutes for the making of wills. In other words, if the policy of the law were otherwise, it would be quite possible for an heir who had been disinherited to fraudulently procure one of the subscribing witnesses to a will to testify that he had not subscribed the will as an attesting witness and thereby thwart the attempt of the testator to devise his property. On account of this danger, it is established law that while the testimony of attesting witnesses denying or impeaching the execution of the will is to be considered and may be sufficient in some cases to prevent probate, it is, nevertheless, to be viewed within caution and suspicion and it is usually entitled to little credence, and a proponent, obliged to call an attesting witness as a witness, is not bound by his testimony. 68 C. J., sec. 801, page 1020. The witness, Isabel, testified that at the time of the execution of the will, Judge S. E. Montgomery, a Justice of the Peace of Yazoo City, was present at its execution. Proof of the date of the death of Judge S. E. Montgomery shows that he died prior to the time of the execution of the will and could not have been present at that time. It is possible that the witness Isabel confused the occasion of the execution of the will with another occasion at which the Justice of the Peace was present. This does not impeach the testimony of Isabel upon the important fact of the execution of the will. "Subscribing witnesses are not to be disbelieved as to important matters merely because they may be mistaken as to details, which may not have impressed them as important at the time of the transaction." 68 C. J., page 1020, section 801.

Such is the status of the testimony of the two subscribing witnesses as to the proper execution of the will.

The case of Harrell v. Harrell, 284 Mo. 218, 223 S. W. 919, is well reasoned, and the principles announced by it are thoroughly in accord with our own general law on the subject of wills. The court there said that in a proceeding to establish a lost or destroyed will, testimony by two of the three alleged subscribing witnesses that they did not sign the instrument will not defeat the establishment of the will, for a lost will may be established by the testimony of only one of the subscribing witnesses that he signed and saw the others sign, the conflict between their statements raising a question for the jury.

Since it is a question of fact for the court to pass upon, it is well to call attention to other decisions by the Supreme Court of this state along collateral matters. Our court has definitely taken the position that in an issue of devisavit vel non the proponents must prove the execution of the will by one of the subscribing witnesses thereto, if within the jurisdiction of the court, but if either or both attesting witnesses deny its execution or fail to testify to its execution, then secondary evidence of its execution may be introduced by the proponents. Ward v. Ward, 124 Miss. 697, 87 So. 153; Williams v. Moorehead, 116 Miss. 653, 77 So. 658; Martin v. Perkins, 56 Miss. 204; Pratt v. Hargreaves, 77 Miss. 892, 28 So. 722, 78 Am. St. Rep. 551; Didlake v. Ellis, 158 Miss. 816, 131 So. 267.

The evidence required to establish the execution of a will is not governed by any different rule from that establishing the contents of a lost will, and our court, in Moore v. Parks, 122 Miss. 301, 84 So. 230, very properly held that the contents of a lost will, its execution having been shown, cannot be proved by hearsay statements of the testator alone. The reason for this rule is that the exercise of the testamentary power is conditioned on the observance of the formalities prescribed by statute with reference to the execution of a will, and a man cannot by his own mere assertion establish that he has fulfilled the conditions necessary to the exercise of the right. A man

might well, in common parlance, say that he has made a will when he has written a testamentary paper that has not been attested by two subscribing witnesses, nor signed and declared by him in their presence to be his will, and when, on account thereof, he has in fact made no will, though he is sincere in his belief of the truth of his declaration. But it is established by the weight of authority that the declarations of the testator as to the due execution of his will and its contents are competent where admitted in corroboration of other competent testimony as to the due execution of the will and the contents of the will. Lane v. Hill, 44 Atl., page 373; Griffith v. Higinbotom et al., (Ill.), 104 N. E. 233.

Considering the positive testimony of the witness Isabel establishing the existence of every fact necessary to the due execution of the will, the corroborative statements by the testator, Mary Sidney, made continuously up to very nearly the hour of her death that she had made a will and deposited it in the Bank at Brandon, by which all of her property was being left to Durwood Collins, whom she had raised; the fact that the copy of the will was found in the Bank at Brandon, leaving the property just as Mary Sidney said she had left it, and showing upon its face that the original will, of which it was a true copy, had been legally and properly executed and was in valid form, and considering on the other side the testimony of Lonnie Banks that he did not sign as an attesting witness and was not present at the time the will was executed, the court cannot help but attribute Banks' testimony to some lapse of memory on his part, and, consequently, is inclined to view it with caution and suspicion and give to it very little credence.

The court, therefore, feels that the proponent has met the burden of proof and as a fact that Mary Sidney in her lifetime, while more than 21 years of age, and of sound and disposing mind and memory, executed a last will and testament, which was duly attested by J. W.

'Isabel and Lonnie Banks as attesting witnesses, and that Mary Sidney signed same and declared it to be her last will and testament in the presence of said subscribing witnesses, who signed their names thereto as subscribing witnesses in the presence of the testator and at her request, and that subsequently the will was copied by Isabel with the intention of mailing the original to the Bank at Brandon, but through a mistake, a true copy of the will was sent by him to the bank instead of the original, and the original was turned over to Mary Sidney for her keeping; that Mary Sidney never revoked said will, but relied upon it as her last will and testament and believed up until the time of her death that the original of said will was on deposit in the Bank at Brandon. The court further finds that the original will was lost and cannot be found after diligent search amongst the papers of Mary Sidney, and that the copy of the will offered in evidence is a true and correct copy of the original last will and testament of Mary Sidney, deceased.

Affirmed.