## Veazey *v.* Turnipseed, et al.

Jan. 11, 1954

No. 39038 48 Adv. S. 20 69 So. 2d 379

*Chatham & Walker,* Hernando, for appellants.

*Roy E. Johnson,* Senatobia; *Hermon Dean,* Canton, for appellees.

ETHRIDGE, J.

This is a suit to establish a lost will. The appeal is from a decree of the Chancery Court of Tate County establishing such will.

The testatrix was Mrs. R. C. Smith of Senatobia. Prior to 1920, Mrs. Smith, whose maiden name was Fannie Veazey, married Robert C. Smith. Her husband had been married twice before and by the earlier marriages had five daughters, who are the complainants and appellees here. They are Mrs. J. P. Turnipseed, Mrs. Nannie Cranfill, Mrs. Mary Davidson, Mrs. Carrie Ellis and Miss Martha Smith. All of these stepchildren of Mrs. R. C. Smith were attentive and devoted to her. At the time she and her husband moved to Senatobia all of the girls were living with them, and continued to do so for several years in the home place in Senatobia. However, around 1919 the five appellees had moved away from the home place because they were either working elsewhere or had married. R. C. Smith died in 1929. Apparently at the time of his death intestate he and the testatrix each owned a one-half interest in the home place, because the record shows that Mrs. R. C. Smith and his five children each inherited a one-sixth of one-half interest in the home place, thus vesting Mrs. Smith with an aggregate seven-twelfth and each of the five girls, appellees, with a one-twelfth interest in that place.

After her husband's death in 1929 and up until the time of her death in March 1952, Mrs. Smith lived in the Senatobia house. Between 1929 and December 31, 1946, when she was injured, she apparently rented rooms or apartments in the house to various persons and earned her living expenses in that way.

In 1942 Mrs. Smith got L. P. Puryear, an attorney in Tate County, to prepare a will for her, which was properly executed by her. That will devised $500 each to Mrs. Smith's brother, sister, and two nephews, and her step-

daughter Miss Smith, and some jewelry to two other stepdaughters. It then devised share and share alike all of her interest in the Smith homestead in Senatobia to her five stepdaughters, the appellees, as well as all furniture and other personal property in the house. Puryear remembered that about four years later Mrs. Smith sent word to him to call her, that she later called him and told him that she wanted to change her will, but that for some reason he never did assist her in doing so.

The bill of complaint was filed by the five appellees, stepdaughters of Mrs. R. C. Smith, in May 1952. It made as defendants forty-six of the heirs of Mrs. Smith but only four of them contested the bill. They were Lamar Veazey, Morgan Veazey, William Veazey and Mrs. Bettie Gene Jordan, who are nephews and a niece of Mrs. Smith. Only Lamar Veazey appealed from the decree establishing the will. The bill charged that Mrs. Smith, who died on March 25, 1952, had made a holographic will on or about March 1947 in accordance with an oral agreement which she had made previously with appellees, complainants below, leaving all of her property to appellees in equal shares in consideration of appellees supporting her; that appellees supported her; that Mrs. Smith had left the will with her neighbor Mrs. H. E. Perkins, who in January 1952 delivered it to Lamar Veazey, appellant, at his request, and this was the last trace or information complainants had of the will after diligent inquiry, and that the will had been lost or destroyed without revocation. The bill charged that Mrs. Smith left an estate consisting of $4,537.43. It prayed that on final hearing the court would enter an order establishing the lost instrument as Mrs. Smith's will and admit the same to probate, and that in the alternative if the lost instrument is not established as a last will, that the court decree that the funds in the estate constitute a trust fund for complainants. The three nephews

and the niece filed an answer denying the averments concerning the lost will, and also filed a special demurrer to that part of the bill charging an agreement to make a will and attempting to establish an oral trust.

The court sustained the special demurrer as to the prayer in the bill "with reference to establishing a trust." After trial the court's final decree of September 27, 1952, established the 1947 will as averred, and adjudicated that it devised the property in equal shares to appellees; that after Mrs. Smith had delivered her will to her neighbor Mrs. Perkins, it was never returned to Mrs. Smith's possession, and was never destroyed or revoked by her. The court in its opinion found that Mrs. Perkins delivered the will to appellant, and that it "has never been traced back into Mrs. Smith's possession." Hence no presumption of revocation by her arose.

██ █ There was ample evidence to support the finding of the chancery court establishing the lost will as testatrix' last will and testament. ██ █ The burden of proof as to the validity of a will is of course on the proponents, and this burden extends to (1) its existence and proper execution, (2) its loss or destruction, and (3) its contents. It is said that the proponents must furnish clear and convincing evidence to support these elements of their suit. Warren v. Sidney's Estate, 183 Miss. 669, 675, 184 So. 806 (1938). Mrs. H. E. Perkins testified that she had read the will at the request of Mrs. R. C. Smith; that it was wholly in Mrs. Smith's handwriting and was signed by her; and that it left all of her estate to the five appellees, her stepdaughters. J. F. Dean, an attorney, testified that after Mrs. Smith broke her leg on December 31, 1946, he came to her house at her request and read the will twice; that he did not remember the testamentary dispositions made in it, but he recalled that "the will was a good will and I so informed her"; that it was dated and entirely written and signed in her own handwriting, showed that it was her will and

named beneficiaries; and that Mrs. Smith was an intelligent woman and understood what she was doing. J. P. Turnipseed, the husband of one of appellees, placed the date of the will between March and July 1947. He testified that in July 1947, while he and his wife were visiting Mrs. Smith, she handed him the will and stated that it was her will, that Mrs. Turnipseed was the executrix, and that she wanted the appellees to have everything she had; and that it was on a piece of paper on the outside of which was written "The Will of Mrs. R. C. Smith." He did not read the instrument. He also testified about the agreement between Mrs. Smith and appellees alleged in the bill. The chancellor accepted the foregoing testimony, and the record is ample to support his findings of the existence and proper execution of the will, its contents, and its loss or destruction without the knowledge or consent of the testatrix.

Appellant argues that the trial court erred in admitting evidence which tended to establish a trust. This point is aimed at the admission of testimony by J. P. Turnipseed concerning an agreement between Mrs. Smith and appellees, by which she agreed with appellees to make her will leaving her property to them, in consideration of appellees taking care of and supporting her. The trial court had sustained a special demurrer to that part of the prayer in the bill seeking to establish a trust in the estate. We find no error in this respect. ▇▇▇ The evidence was admissible for the purpose of showing the relationship between Mrs. Smith and her stepdaughters, and as tending to show the reason why she would leave her property to them and to negative appellant's position that she had destroyed and revoked the will.

▇▇▇ Appellant's third assignment of error arose in this way: Mrs. H. E. Perkins was a niece of Mrs. Smith, had lived across the street from her about 38 years, and visited her practically every day. If Mrs. Smith had died intestate, Mrs. Perkins would have inherited a small

fractional interest in her estate. Since she was testifying against her own interest, her evidence was admissible. Birchett v. Hundermark, 145 Miss. 683, 694, 110 So. 237 (1926); Estes v. Estes, 200 Miss. 541, 547, 27 So. 2d 854 (1946). She testified that about 1949 Mrs. Smith called her to her home and said that Carl Womble, a friend, had returned to her some papers which he had been keeping for her, among which was a will; that Mrs. Smith handed her the will, asked her to read it, and that she read it; that by it all her property was left to appellees; and that the will was wholly in her handwriting and signed by her. After she had read the will, Mrs. Perkins said that Mrs. Smith put it in an envelope, sealed it and gave it to her, along with the deed to her house, for Mrs. Perkins to keep for her in the safe in Mrs. Perkins' house. Mrs. Perkins also said that on the day Mrs. Smith sold her house to the Senatobia Methodist Church, which was January 15, 1952, Lamar Veazey, appellant, came to her house around 5 P. M. and told her that Mrs. Smith said to send her "all the papers," so she gave Veazey the will and the deed. She watched him as he crossed the street and went into Mrs. Smith's house, but she did not know whether Mrs. Smith ever got the will back in her possession. Mrs. Perkins said that she had not seen the will since that time. Appellant was a nephew of Mrs. Smith, and if she had died intestate would have received a fractional interest in her estate. Mrs. Perkins testified that Veazey had lived in his aunt's home for several years, and that he had run many errands for her. Mrs. Smith died on March 25, 1952.

Mrs. Perkins then testified over appellant's objection that after Mrs. Smith's death appellant denied to her that she had given him the will. During the course of objections to this testimony appellees' attorney stated that it was charged in the bill that the will was delivered to appellant. Appellant's attorney then said, "That's

not denied, it's admitted in the answer that the envelope was turned over to him."

Toward the close of appellant's case appellant Lamar Veazey was offered as a witness "to prove that he made no such statement to Mrs. Perkins or that he denied that Mrs. Perkins had given him the will, but to show that he told her when she asked him about it that if she did give him the will, whatever she gave him he gave it to Mrs. Smith." The chancery court held that Veazey was incompetent to testify to establish his claim against the estate of a deceased person, because of Code Section 1690, which provides in part: "A person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person which originated during the lifetime of such deceased person, or any claim he has transferred since the death of such decedent. But such person so interested shall be permitted to give evidence in support of his claim or defense against the estate of a deceased person which originated after the death of such deceased person in the course of administering the estate . . ."

▮▮▮▮▮ Appellant says that the exclusion of Veazey's offered testimony was reversible error. It is first argued that since Mrs. Perkins stated that this conversation with Veazey occurred after the death of Mrs. Smith, it was not within the purview of Section 1690. However, he was offered to testify that he told Mrs. Perkins that whatever she gave him he gave it to Mrs. Smith, and this would have tended to establish his own claim against the estate which originated during the lifetime of the deceased. ▮▮▮▮ Nor was there any waiver by appellees of appellant's incompetency merely because Mrs. Perkins was permitted to testify concerning admissions against interest by Veazey. ▮▮▮▮ When a litigant introduces statements by an adversary against his own interest, this does not constitute a waiver of Section 1690 so as to make the adversary a competent witness. A good illustration

of this arose in Martin v. Martin's Estate, 63 So. 2d 827 (Miss. 1953), where appellant claimed to be the common-law wife of Peter Martin, deceased, and therefore sought to renounce his will. Appellee introduced income tax reports of appellant in which she stated that she had no husband. Many witnesses testified that appellant always referred to herself as Mrs. Moore, and not Mrs. Martin, and that she introduced herself as Mrs. Moore the housekeeper and not Mrs. Martin. The court expressly rejected the argument that such evidence for appellee waived appellant's incompetency under Section 1690 to testify for her claim against the estate.

 Appellant further contends that Veazey was competent to testify as to what he did with the instrument after Mrs. Perkins delivered it to him. However, such testimony would be directly in the face of the prohibition of Section 1690, and would support Veazey's claim against the estate of Mrs. Smith. If he had testified either that he had given the will to Mrs. Smith, or that he gave her whatever Mrs. Perkins transmitted to him, his testimony would have placed the will back into Mrs. Smith's possession. This would have created a presumption that the testatrix destroyed it animo revocandi, the will being thus shown to have been in her possession when last seen. 57 Am. Jur., Wills, Section 549; Watkins v. Watkins, 142 Miss. 210, 234, 106 So. 753 (1925). We think that Whitehead v. Kirk, 104 Miss. 776, 62 So. 432 (1913), and the decisions following the principles applied in that case are controlling, and that to that extent Tucker v. Whitehead, 59 Miss. 594 (1882) is not relevant. Section 1690 applies to proceedings to probate a will. Whitehead v. Kirk, supra. Appellant admits that Veazey received the instrument from Mrs. Perkins. We hold that the learned trial court was correct in ruling that he was incompetent to testify either that he gave the will to Mrs. Smith or that if Mrs. Perkins gave him the will, whatever she gave him he gave it to Mrs. Smith. That would have been

substantive evidence on the issues of loss and revocation vel non. ▇▇ ▇ Whether Veazey would have denied that he told Mrs. Perkins that she had not given him the will was not substantive evidence on those issues and was immaterial, and even if it were error to exclude the testimony of Veazey to that limited extent, it was on an immaterial point and not reversible error.

Affirmed.

*Roberds, P. J.,* and *Lee, Kyle* and *Holmes, JJ.,* concur.