PIERCE, Justice,
dissenting:
¶ 22. Respectfully, I must dissent from the majority’s finding that the chancellor erred by admitting Lela W. Holmes’s will to probate. Based on my review of the record in this case, there is sufficient evidence to support the chancellor’s finding that Lela’s will was duly executed and witnessed by two attesting witnesses in compliance with Mississippi Code Section 91-5-1 (Rev.2004).
¶ 28. In Estate of Griffith v. Griffith, 30 So.3d 1190, 1199 (Miss.2010), I expressed my concern that this Court was jeopardizing countless wills in this state by its failure to take into consideration witnesses who are unable to recall the manner by which a purported will was subscribed and attested. There, a majority of this Court affirmed the chancery court’s order rejecting the probate of a will, where the will’s two purported attesting witnesses testified later at trial that they were unaware that the document they had signed was a will. Id. at 1196. I dissented from the majority’s opinion because the evidence showed that both witnesses, contrary to their testimony at trial, knew and understood that the testator had desired them to attest his last will and testament at the time of its execution. Id. at 1199. Citing Warren v. Sidney’s Estate, 183 Miss. 669, 184 So. 806, 809 (1938), I reiterated this Court’s longstanding view that, “[i]t is not the policy of the law to permit the defeat of probate of a will because of the failure of the memory of an attesting witness!;]” keeping in mind that, “testimony of attesting witnesses denying or impeaching the execution of the will is ... to be viewed with caution....” Id. at 1196 (quoting Warren, 184 So. at 809).
¶24. Here, Sue Chawla and Jennifer Delaney were tasked with having to recall an event that had occurred nine years prior, and both repeatedly made clear in their respective testimonies that they had difficulty remembering that distant event. Despite this, both Chawla and Delaney, unlike the witnesses in Griffith, provided testimony that they knew the instrument they had signed was Lela’s Last Will and Testament and that Lela had signed the will in their presence. When asked on direct examination whether she had satisfied herself that Lela was of sound mind, Chawla could not remember. At that point in the proceedings, counsel for the proponents was permitted to refresh *1155 Chawla’s memory with a sworn affidavit, dated April 21, 2010, and titled “Proof of Will,” and which was thereafter entered into evidence, without objection from the contestants. The affidavit contains the following statement:
Sue Chawla ... deposes and states on oath that she is one of the subscribing witnesses to that certain instrument of writing purporting to be the last Will and Testament of Lela Holmes; that the said Lela W. Holmes signed, published, and declared said instrument to be her Last Will and Testament on the 20 day of June, 2001 in the presence of this Affiant and the other subscribing witness to said instrument; and that said Testatrix was then of sound and disposing mind and memory and over the age of eighteen years; that this Affiant and the other subscribing witness subscribed and attested said instrument as witnesses to the signature and publication thereof at the special instance and request and in the presence of said Testatrix and in the presence of each other.
¶ 25. Delaney, too, was unable to remember specifically, when asked during her direct examination, whether, from her observations, Lela knew and understood what she was doing by signing the will. Delaney did, however, testify that she would not have signed Lela’s will had she believed that Lela did not understand what she was doing.
¶ 26. True, each witness gave conflicting testimony in this case. As the majority points out, both witnesses said on cross-examination that Lela did not, in her own voice and words, ask them to sign the will. Chawla, when asked on cross-examination whether she had “engage[d] in any conduct designed to ascertain whether [Lela] was of sound and disposing mind at the time she signed the will[,]” responded, “No[.]” And when pressed by the Contestants’ counsel as to whether she knew the instrument she was signing was a will, Chawla said “she did not think she knew it was a will.” Also, Delaney, when asked, “do you know if [Lela] understood that she was— that you were witnessing her[,]” replied, “No.”
¶ 27. These differing accounts, however, along with the significant fact that these witnesses had difficulty recalling the circumstances in connection with the purported will, merely presented an issue for the chancellor, sitting as fact finder in the case, to resolve in her determination on the ultimate question of whether Lela’s will was validly executed.
¶ 28. In Smith v. Smith, 185 Miss. 702, 188 So. 305, 806-07 (1939), this Court found a jury issue regarding attestation where “[t]here was no testimony that the alleged testator in any manner personally declared to [the witness] that the instrument was his will at the time of its execution or that he ever requested him to attest it as such.” Id. at 307. The Smith Court also found a jury question as to whether or not the alleged testator possessed sufficient testamentary capacity to execute a valid last will and testament, noting that: “We would not reverse the case on the finding of the jury as to [this issue] ... even though the great preponderance of the evidence seems to us to establish the contrary.” Id. at 306.
¶ 29. In the instant matter, while Lola, herself, may not have asked Chawla and Delaney to witness her will, the evidence presented shows that enough was said and done in Lela’s presence and with her knowledge and understanding to make the two witnesses understand that she desired them to know that the paper was her will, and they were to be witnesses thereto. Green v. Pearson, 145 Miss. 23, 110 So. 862, 864 (1927). Thus, at the very least, there was constructive publication of *1156 Lela’s will. Accordingly, I would affirm the chancery court’s decision to admit the will to probate.
WALLER, C.J., AND KITCHENS, J., JOIN THIS OPINION.