The Chancery Court of Sunflower County entered its decree admitting the Will attached hereto as Annex A to probate in solemn form. The decree probated the Will in its original form together with a Codicil which named another Executor. From this decree, appellants, who are some of the heirs-at-law of the Testator, appealed. The principal appellee here is one of the charitable beneficiaries named in the Will.
The Testator, a college graduate, and his wife executed virtually identical Wills on April 1, 1968, with the only difference between the Wills being that where he named her as the beneficiary, she named him. The wife predeceased the Testator in 1973. The Will of the Testator as well as the Will of his wife, together with a Codicil which he executed on May 6, 1975, were found after the death of the Testator on June 27, 1976, in a box under his bed where he had previously told his nephew that it was kept. The Codicil provided for the appointment of a new Executor and set the fee of the Executor and limited the expenses to be incurred by the Executor. The Testator and the nephew were the only parties with access to the house and this nephew was not an heir-at-law since his father, the brother of the Testator, was still living. It is further noted that the amount of the devise under the Will to this nephew's father was virtually the same as his share as an heir-at-law would be. Prior to his death, on different occasions the Testator had stated to different parties that he intended for his estate to go in a manner different from that provided by the original Will and there was found with the Will another document in the Testator's handwriting which indicated an intent for assets to go in a manner different from that provided in the Will, but the document was not signed.
The parties stipulated that the Will was validly executed on April 1, 1968; that the Codicil was validly executed on May 6, 1975; and that the words written on the Will were in the Testator's handwriting. There was no evidence as to when the writing and markings were placed on the Will.
The Chancellor's opinion clearly indicates that his decision admitting the Will to probate was based on the fact that he thought the Testator intended to die testate and that he reached this conclusion because of the 1975 Codicil which he felt established an intent to die testate. This is clear from a statement in the opinion that "The one thing that clearly shines through here is from the Codicil. . . ." It is also clear from the opinion that the Chancellor did not consider any presumptions relative to the markings on the Will.
We agree that as of the date of the Codicil the Testator intended to die testate, but from the facts here we cannot agree that the Will should have been admitted in its original form. Mississippi Code Annotated, Section 91-5-3 (1972) clearly authorizes a total or partial revocation by either cancellation or obliteration, though it appears that the Chancellor felt that the revocation had to be total or not at all. The general law relative to cancellation or obliteration, as found in 95 C.J.S. Wills § 280, is as follows:
 Usually in legal as well as in common acceptance cancellation is accomplished by the drawing of lines over or across words with the intent to nullify them and the form and extent of the lines are totally unimportant as long as they are a physical token of the intent to revoke. . . . *Page 754 
Revocation by obliteration may be effected by erasing, drawing lines across the signatures of the testator and the witnesses, or blotting out the words of the will. Obliteration does not require the effacing of the letters of the will so completely that they cannot be read.
Having examined the Will now before the Court which is attached as Appendix A hereto, and in view of the standards above set out, it must be concluded that the markings on this Will are sufficient to accomplish a partial revocation by cancellation and obliteration. The extent of these markings causes us to reject the argument that they were made simply for the purpose of providing a rough draft of changes that were merely contemplated. Thus we must determine whether this was done by the Testator with the intent to revoke or partially revoke the Will, for the law is clear in this state that this is a necessary element of effective revocation. Livelar v. Arnold, 233 So.2d 760 (Miss. 1970);McCormack v. Warren, 228 Miss. 617, 89 So.2d 702 (1956).
Relative to this proof of intent to revoke and of the fact that it was done by the Testator, we find a presumption that the lower court apparently did not consider applicable here which is stated in 79 Am.Jur.2d, Wills, Section 607, as follows:
 It is generally agreed that if the Will produced for probate which is shown to have been in the custody of the Testator after its execution was found among the Testator's effects after his death in such a state of mutilation, obliteration, or cancellation as represents a sufficient act of revocation within the meaning of the applicable statute, it will be presumed in the absence of evidence to the contrary that such act was performed by the Testator with the intention of revoking the instrument.
One of the cases establishing this presumption is the Mississippi case of Whitehead v. Kirk, 104 Miss. 776, 61 So. 737, sugg. of error overruled 104 Miss. 823, 62 So. 432 (1913). Applying this presumption to the facts we have here, especially the facts relative to the custody of the Will, the extent of the markings and the statements of the Testator, we must conclude that the Testator intended to revoke those portions of the Will over which he had made the markings that appear on the Will. This is a rebuttable presumption which was recognized in the case ofAdams v. Davis, 233 Miss. 228, 102 So.2d 190 (1958), but we find the facts there quite distinguishable from those here. It appears to this Court that under the law as set out above, it must be concluded that the Testator made the marks on the Will and that he did so in a manner sufficient to accomplish a partial revocation of the Will by obliteration and cancellation.
We, therefore, conclude that the decree rendered below should be reversed and a judgment rendered here for the appellants; that all of those portions of the Will through which lines were drawn, being Items IV and VI of the Will, were effectively revoked; that the provisions written on the Will relative to the W.F. Bond Home for Older Men and those written on the separate document relative to the sale of the place, are invalid, not having been signed by the Testator; that the remaining portions of the Will are valid; that the Codicil naming Harpole as Executor is valid; that the devise to the wife in Item II has lapsed; that there being no valid or effective residuary clause, the assets of the estate should go to the heirs-at-law as provided by the law of this state; and that the Executor should be governed by all the provisions of the Will and Codicil which are not hereby declared to have been revoked by Testator; and that this cause should be remanded to the lower court for carrying out the provisions hereof.
REVERSED AND JUDGMENT ENTERED HERE FOR APPELLANTS; CAUSE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur. *Page 755 
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 756 
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 757 
[EDITORS' NOTE: APPENDIX A IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 758