420 So.2d 242 (1982)
DEPOSIT GUARANTY NATIONAL BANK, Catherine M. Fortenberry, John L. Sullivan and Jackie Sullivan
v.
Joel COTTEN.
No. 53708.
Supreme Court of Mississippi.
October 6, 1982.
Scales & Scales, Clarence R. Scales, Jackson, Wells & Blalock, Calvin B. Wells, Natchez, for appellants.
W.W. Hewitt, Meadville, for appellee.
Before SUGG, HAWKINS and PRATHER, JJ.
*243 PRATHER, Justice, for the Court:
The appellants, as beneficiaries and trustee, filed a petition in the Chancery Court of Franklin County to probate a copy of Louise Cotten's 1961 will. Mrs. Cotten's husband, Joel Cotten, contested the probate of the 1961 will by claiming that it had been revoked by a subsequent 1979 will. Alternatively, he alleged that the 1961 will had presumably been revoked since its original was missing and was last known to be in the possession of the testatrix. The jury found in favor of the contestant, and thereby denied probate of the 1961 will. We affirm.

I.
In 1961, Louise Mullins Clements executed a last will and testament bequeathing her entire estate to a testamentary trust in favor of the appellants herein. Her sister, Catherine Mullins Fortenberry, and her two nephews, John and Jackie Sullivan, the sons of Catherine Mullins Fortenberry, were the sole beneficiaries. Deposit Guaranty National Bank [hereinafter referred to as the Bank] was named trustee. The bank apparently kept an executed copy of this will, and the original was given to Mrs. Clements.
After 1961, Clements married Joel Cotten. They were subsequently divorced in 1977, but remarried in June of 1978. Sometime prior to April 24, 1979, Mrs. Cotten employed Maxwell Graves, an attorney, to revise her former will. Upon Mrs. Cotten's request, a copy of her 1961 will was delivered by the Bank to Graves. On April 26, 1979, a new will was duly executed but the full contents of the will were not testified to. The only known change was indicated in a letter from Graves addressed to the Bank's branch in Natchez, and it requested that the beneficiary of Mrs. Cotten's certificate of savings be changed to Joel Cotten. Another letter from Graves to the Bank's Jackson branch enclosed a copy of Mrs. Cotten's new will. Graves kept the original of this 1979 will in his office.
Nevertheless, on July 11, 1979, Mrs. Cotten had once again telephoned the Bank at its Jackson branch and requested that a copy of her will be sent to her for some changes. On July 12, 1979, the Bank mailed her "a copy", presumably of the April, 1979 will.[1] Thereafter, Mrs. Cotten filed a bill for divorce against Joel Cotten in the Chancery Court of Franklin County on July 17, 1979. However, no action was taken on the divorce case, and it was eventually dismissed after her death.
During the fall of 1980, Mr. and Mrs. Cotten visited the office of Graves, and they tore up the 1979 will at this time. During the trial, Graves attempted to testify as to the will's contents, but the appellant's counsel objected to such testimony and the chancellor below sustained.
In the latter part of 1980 and early in 1981, Mrs. Cotten was hospitalized. She entered the hospital in March of 1981 for her last illness, which terminated with her death on March 23, 1981.
On March 31, 1981, Joel Cotten was appointed administrator of the estate of Louise Cotten, he being her sole heir at law, and he knowing of no last will or testament. On May 5, 1981, proponents of the 1961 last will and testament filed a petition to probate an executed copy of that will, making Joel Cotten a defendant. No original wills *244 were found, nor did any witnesses testify as to what happened to the original of the 1961 will. The proponents/appellants now appeal from a jury verdict in favor of Joel Cotten.

II.
The appellant's first contention is that the chancery court committed error in overruling their motion to exclude the jury on the issue involving probate of the 1961 will. Under certain circumstances, a chancellor must retain a jury to determine issues of fact. See e.g. Miss. Code Ann. § 91-7-19 (1972) (at request of either party to probate proceeding, a jury may decide whether writing propounded is a will of the alleged testator); Miss. Code Ann. § 91-7-29 (1972) (witnesses in trial of issue devisavit vel non shall be examined before a jury); Fowler v. Fisher, 353 So.2d 497 (Miss. 1977) (verdict of jury is not merely advisory where required by statute). Furthermore, a chancellor always has the discretion to permit a jury to decide a factual question where necessary and appropriate. Miss. Code Ann. § 11-5-3 (1972); Laub v. Reason, 217 Miss. 475, 64 So.2d 637 (1953); Carradine v. Carradine, 58 Miss. 286 (1880).
In the case at bar, the contestant's pleading raised the issue of revocation of the 1961 will. In other words, the question to be answered was whether the testatrix revoked her 1961 will or whether she did not. Such an issue, which is also termed revocavit vel non, should be submitted to a jury. W. Morse, Wills and Administration in Mississippi, § 8.16 (1968). Thus, we conclude that the issue of revocation was properly submitted to the jury by the chancellor below.

III.
The appellants' second contention is that the chancery court committed error in refusing to grant the proponent's motion for a directed verdict. On a motion for a directed verdict, all evidence of the party movant which is in conflict with the opposing party's evidence must be disregarded and, if the opposing party's evidence is sufficient to support a verdict, the motion must be overruled. Loflin v. Thornton, 394 So.2d 905 (Miss. 1981); Buford v. Jitney Jungle Stores of America, Inc., 388 So.2d 146 (Miss. 1980).
In the instant case, the contestant was benefitted by a rebuttable presumption in his favor that the 1961 will was revoked since the original was last known to be in the testatrix's possession and could not now be found. See Estate of Willis v. Willis, 207 So.2d 348 (Miss. 1968) (if will was last known to have been in possession of testator and is not found after diligent search, it is presumed to have been destroyed by him animo revocandi); Adams v. Davis, 233 Miss. 228, 102 So.2d 190 (1958) (presumption not altered by fact that will was executed in triplicate and one copy was in possession of third party). Moreover, the contestant introduced proof of a subsequent 1979 will and of a letter indicating that Joel Cotten was the beneficiary of the testatrix's certificate of savings, a feature which was inconsistent with the disposition under the 1961 will.
All of these factors support the contestant's position that the 1961 will was revoked. Nor does the fact that the 1979 will was eventually revoked change this conclusion. Although some jurisdictions conclude that revocation of a second will revives a prior will, our Court has ruled otherwise. See generally T. Atkinson, Handbook of the Law of Wills § 92 (2d ed. 1953) (revival by revocation of a latter will operates to revive former will in some jurisdictions). In Bohanon v. Walcot, 1 How. (2 Miss.) 336 (1836), the Court stated:
A will is ambulatory, and has no effect, until the death of the testator. If he lets it stand until his death, it is his will, but if revoked, it cannot be. But when revoked, it cannot be considered as having either a present or a potential existence, and must require some express and direct act of the testator, which, in fact, does not revive the defunct will, but adopts it as the present will of the testator, and it is to be regarded as a new testamentary *245 act of the party. To this effect is the text in Roper on Wills, 2S, and the decision in Burtenshaw v. Gilbert, 1 Cowp. Rep. 49; Powell on Devises, 551.
It is expressly said in 7 Johns.Chan. Rep. 270, that where a will has been revoked, either expressly or impliedly, it is gone forever.
The expression of George Grissell, that if the will which Bacon was desired to write for him should not be completed, he desired the will of 1829 to go into effect, cannot be regarded as a republication of that will. The wish was contingent, and future in its operation. And if the doctrine above held, and which is fully recognized in 7 Johns.Chan.Rep. 270, be correct, it follows, that if the intention had not been future and contingent, but present and unconditional, it would not have had the effect to revive the former will. (Emphasis added). [Id. at 339-40].
... .
There is no evidence in the record which indicates that Mrs. Cotten adopted or republished her 1961 will after revocation of the 1979 will. Under these circumstances, the contestants' proof was sufficient to support a verdict, and therefore, the chancellor properly denied the motion for a directed verdict.

IV.
The appellants' third contention was that the chancery judge erred in admitting testimony concerning the subsequent will of 1979. Section 91-5-3 of the Mississippi Code Annotated provides that: "A devise so made, or any clause thereof, shall not be revocable but by the testator or testatrix destroying, canceling, or obliterating the same, or causing it to be done in his or her presence, or by subsequent will, codicil, or declaration, in writing made and executed." (Emphasis added). In the instant case, the contestant attempted to prove revocation of the 1961 will by the subsequent 1979 will. Since the subsequent will was allegedly destroyed by Mr. and Mrs. Cotten, the only proof available to show that the subsequent will existed was the testimony of witnesses who had seen the will. Our Court has on prior occasions permitted such proof to establish the existence, proper execution, and contents of wills no longer existing. Veazy v. Turnipseed, 219 Miss. 559, 69 So.2d 379 (testimony of witnesses who read holographic will and recognized it as being wholly in testatrix's handwriting and signed by her was sufficient to establish the existence and proper execution of that will); Warren v. Sidney's Estate, 183 Miss. 669, 184 So. 806 (1938) (declarations of testator coupled with other competent evidence may be used to establish existence and contents of lost will). Thus, it would appear not only that the testimony concerning the subsequent will's existence was admissible but, that the chancellor should have allowed the testimony as to its contents, i.e., whether there was a statement of revocation of the 1961 will, or whether there were inconsistent devises under the two wills. We find no error in introduction of proof of the execution and revocation of the latter will.

V.
The appellants also contended that the chancellor erred in refusing to allow into evidence a public record concerning the divorce proceeding which was pending at the time of Louise Cotten's death. Similar evidence has been admitted in other jurisdictions to show nonrevocation where a testatrix was on unfriendly terms with the spouse who would be benefitted by the destruction of an unfavorable will. See In re Dean's Estate, 62 Cal. App.2d 418, 144 P.2d 849 (1944) (admission of evidence of unfriendly relations between surviving husband and testatrix where husband also had opportunity to destroy will); In re Keene's Estate, 189 Mich. 97, 155 N.W. 514 (1915) (proof of unfriendly relations between testatrix and husband, to whom she bequeathed only $10 by will, which could not be found, held to be material on issue of nonrevocation).
Our Court, in Tucker v. Whitehead, 59 Miss. 594 (1882), laid a broad foundation for the admissibility of evidence in comparable matters by stating:

*246 In such a case it is the part of wisdom to open the doors as wide as possible for the reception of every species of evidence at all calculated to advance the discovery of truth, since not to do so must in a great number of cases result in defeating the will of the deceased by accident or fraud. The evils which may spring from the introduction of parol proof in such a case are less than those which must be wrought by its exclusion. [Id. at 606].
Thus, it was error for the chancellor to deny the admission of the divorce record. However, the record is replete with statements from various witnesses concerning the marital problems of this husband and wife over the years of their marriage. Moreover, the fact that the divorce suit was pending at the time of her death was also brought out in testimony. We, therefore, find no reversible error in the chancellor's exclusion of this cumulative evidence.

VI.
The appellant's final contention is that the chancellor committed error in failing to timely instruct the jury to disregard remarks made by the contestant's attorney during closing arguments. The record indicates the following:
I want to dictate into the record a motion for a bill of exceptions for a statement made by adverse counsel made with regard to Louise Cotton, that statement was made to the Jury that she was head strong and hard to get along with at times.

The chancellor below sustained this objection. However, we still fail to see any prejudice resulting to the proponents from that statement based on the testimony of this record. Thus, we conclude that this contention is without merit.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, HAWKINS, BOWLING and DAN M. LEE, JJ., concur.
NOTES
[1] The record is not clear as to how many or what copies of which wills were mailed. The trust officer was asked:

Q. Now you say a copy of the will was mailed back to her was it the will of 1961, that copy?
A. According to our records we mailed both back, one was mailed to her in 1968 and another mailed to her in 1961.
Q. The original?
A. No, sir, we never had the original.
A. The copy of the original?
A. No, sir, we never had the original. The copy of the 1961 will was mailed to her, the copy of 1968, the copy of the 1979 was mailed to her in July 1979. We never had the original of either one.
No other testimony about "the copy of 1968" or any cover letter of that date is developed in the file. However, an executed copy of the 1961 will is offered for probate here. Presumably, copies mailed were xeroxed copies of the executed one held by the Bank. But the record is not clear.