DAN M. LEE, Presiding Justice, for the Court:
This case comes before the Court as an appeal from the final judgment of the Tate County Chancery Court construing the will of Mrs. Lou Ella A. Lyles. Mrs. Lyles attempted to alter her will in several respects after the initial execution. The lower court held that these alterations had no effect as they were made with an intent to amend the will and the requisite statutory formalities were not observed. The chancellor further found that even if some of the marks were motivated by an intent to revoke the affected portions, the intent was conditioned on the efficacy of other concurrent changes. Therefore, the doctrine of dependent relative revocation was invoked to reinstate the original will.
Mothershed appeals this ruling assigning the following as error on the part of the lower court:
I. THE LOWER COURT ERRED IN FINDING THAT THE INTENT OF THE TESTATRIX WAS TO CHANGE OR AMEND HER WILL AT A FUTURE DATE AND NOT TO PARTIALLY REVOKE IT.
II. THE LOWER COURT ERRED IN APPLYING THE DOCTRINE OF DEPENDENT RELATIVE REVOCATION.
III. THE LOWER COURT ERRED IN FAILING TO APPLY THE DOCTRINE OF IMPLIED REVOCATION.
Finding that the Chancellor’s application of the doctrine of dependent relative revocation to the facts of this case was error, we reverse.
STATEMENT OF THE FACTS
The testatrix, Lou Ella A. Lyles, died on March 2, 1988, at the age of 94. Mrs. Lyles’ niece and nearest kin, Miss Bennie A. Mothershed, is both the executrix of her will and the appellant in this case.
Brodie Howell, the appellee and beneficiary of the devise in question, is á young man who enjoyed a good relationship with the testatrix from a very early age. Specifically, he visited Mrs. Lyles’ home as a child while his grandfather farmed fields on Mrs. Lyles' property. Later, they had opportunity for social contact at the church *1188 they attended. For a time Mrs. Lyles taught Brodie Howell’s Sunday School class. Further evidence of Mrs. Lyles’ motive for devising realty to Howell was offered at trial in the form of testimony about an agreement between Mrs. Lyles and James Mize, Howell’s grandfather. The substance of the agreement was that if Mr. Mize would change his decision to stop raising row crops on the Lyles property, Mrs. Lyles would give Brodie 40 acres of the property in her will.
The parties stipulated that as originally executed, Item II of Mrs. Lyles’ will read as follows:
I now own 140 acres of land, more or less, located and situated in Tate County, Mississippi, and being more particularly described as the North Seven-Eighths of the Northwest Quarter of Section 10, Township 6 South, Range 6 West, in said county. I do hereby will, devise and bequeath unto Brodie Howell 40 acres of my said land and which 40 acres is described'as being bounded on the South by the land of Bennie A. Mothershed, on the East by the land of Pennington, and on the North by the land of Mrs. Bill Gordon. I do hereby will, devise, and bequeath the remainder of my said real property, being 100 acres, more or less, unto my niece, Bennie A. Mothershed, for and during the term of her natural life (being the wishes of my parents) and she is authorized and empowered to leave such land to her choice of the blood kin on her mother’s side of her family. By way of explanation, the said 100 acres shall and does include the residence which I have occupied as my home.
When the will was found in the home of Mrs. Lyles, after her death, the devise to Howell had been scribbled out. The figure 100 in the latter sentences of Item II had also been marked out and the figure 140 written in above. Howell’s name had been written beside Item VII, a later clause bequeathing a certificate of deposit to a group of beneficiaries. The parties further stipulated the following facts:
1. The will was validly executed on August 27, 1982, and, at that time there were no markings or alterations on the will;
2. The testatrix owned 140 acres in Tate County both at the time of execution and at the time of her death; and,
3. The alterations appearing on the will were present when it was discovered.
On Mothershed’s petition for construction and interpretation, the Chancellor made the aforementioned findings that the changes were made with an intent to amend rather than to revoke and that the doctrine of dependent relative revocation applied. On appeal Mothershed challenges both these findings.
I. Whether the lower court erred in finding that the intent of the testatrix was to change or amend her will rather than to partially revoke it.
As mentioned above, the testatrix marked out one specific devise in her will. The question is, what was her intent in doing so? If she intended to amend her will as found by the chancellor, the amendment was ineffective. Under Mississippi statutory law, however, she could have revoked this portion of her will by cancellation. See Miss.Code Ann. § 91-5-3 (1972)[1] Cancellation, as interpreted by this Court, is “accomplished by the drawing of lines over or across words with the intent to nullify them and the form and extent of the lines are totally unimportant as long as they are a physical token of the intent to revoke.” In re Will of Palmer, 359 So.2d 752, 753 (Miss.1978). Furthermore, as stated in Palmer:
It is generally agreed that if the Will produced for probate which is shown to have been in the custody of the Testator after its execution was found among the Testator’s effects after his death in such a state of mutilation, obliteration, or cancellation as represents a sufficient act of revocation within the meaning of the ap *1189 plicable statute, it will be presumed in the absence of evidence to the contrary that such act was performed by the Testator with the intention of revoking the instrument.
Id. 359 So.2d at 754.
The logical starting point for analyzing the intent of the testatrix is the finding of the lower court on the issue. First, the chancellor found it “interesting” that there were two former wills of Mrs. Lyles. These wills had been admitted by stipulation of the parties. The earlier of the two was a holograph while the later was properly attested. Both were dated in the same month (February 1980). The second, attested will was altered in a manner similar to the will in question. Specifically, Brodie Howell’s name was written in above the marked out name of his grandfather (James Lindsey Mize) in the clause disposing of the 40 acres. Brodie Howell’s name was deleted from the later legacy provision and an unrelated third party, Greg Taylor, was handwritten beside the clause. Later, Brodie Howell was added back to the legacy clause by marking out Taylor and writing in Howell. The changes adding Howell to the devise and deleting him from the legacy were carried forward into the last will of the testatrix. This evidence led the lower court to find as follows:
Now, the court finds the law, as the Court sees these documents, and as it meshes with the testimony, that this lady was attempting to amend her will, to change that which one person was to receive from one item to another, although the differences in value has been testified and argued as being considerable. But, nonetheless, she was moving from one position to another, as he [sic] had earlier done.
The appellant challenges this finding relying primarily on the ruling of this Court in In re Will of Palmer, 359 So.2d 752 (Miss.1978) (to the effect that similar alterations were effective partial revocations). Mothershed correctly points out the following similarities to the Palmer case:
Palmer’s will and a codicil thereto were found after his death in a box under his bed where he had previously told his nephew it was kept. Palmer and a nephew were the only parties with access to the house. There were markings, writings, and obliterations on the will. It was stipulated that the will was validly executed and the words written on it were in the testator’s handwriting.... The trial court admitted the will to probate in its original form.
As the above quotation shows, the Palmer facts are nearly identical to the current facts. Mothershed goes on to liken the lower court holdings in Palmer and the current case. However, as Howell points out, the comparison fails at this point because the holdings are not similar. The lower court in Palmer found that the changes were made with an intent to prepare a rough draft for future changes. In the current case, the holding was that the alterations were made with a present intent to effect an amendment. For this reason, the portion of the argument by Mothershed addressing the effect of an intent to amend by future act is not relevant.
At any rate, the Palmer case does support Mothershed’s position to the extent that it establishes the presumption of intent to revoke that arises when an altered will is found among decedent’s effects after death. The case also supports Moth-ershed’s argument in that written material added after execution was implicitly held not to rebut the presumption of revocatory intent.
The argument of Howell, the appellee, on this issue centers on the proposition that there is a distinction between an intent to revoke and an intent to amend. Furthermore, in Howell’s estimation, there is ample evidence in the record to support the chancellor’s finding that Mrs. Lyles was motivated by an intent to amend. In support of this proposition, he sets out .the following Am.Jur. section in his brief:
To revoke a testamentary disposition is to annul it, so that in legal contemplation it ceases to exist and becomes as inoperative as if it had never been written. But where, by the substitution of certain words for others, a different meaning is *1190 imparted, there is something more than a revocation. There is a transmutation by which a new clause is created. There is another and a different testamentary disposition, which, to have validity, must be authenticated by the observance of the statutory requirements for the execution of wills.
79 Am.Jur.2d Wills § 557 (1962).
There is no dispute that the changes cannot be effective. The issue is whether the attempt to make the changes is sufficient to work a partial revocation. The cited section goes on to state a rule that attempted amendments cannot be construed as partial revocations. The rule is “an application of the doctrine of dependent relative revocation.” Id. The applicability of this doctrine to the current facts is the second question this Court must answer and is addressed below.
To distinguish between an intent to amend and an intent to revoke in the factual context presented in this case would be illogical. The “amendments” attempted by the testatrix clearly consisted of two steps. First was a revocation of the existing dis-positive scheme. Second was the adoption of a new dispositive scheme. While there is a definite and crucial issue as to whether she intended the first step to be dependent on the success of the second, there can be no doubt that there was an intent to revoke the original devise by cancellation. A holding along these lines would be in accord with the relevant ALR annotation which states:
If the jurisdiction is one in which partial revocation is permitted, probate or distribution will be made in accordance with the terms of the will as originally drawn, where the doctrine of dependent relative revocation is, under the circumstances, applicable. But if the circumstances are such that the intent of the testator that the revocatory part of his attempted alteration shall stand even if the disposi-tive words or figures he has added prove ineffectual, is clear, with the result that the dependent relative revocation doctrine may not be applied, then the disposition to be made of the case will depend upon such factors as the nature of the provisions sought to be changed by the testator or the precise nature of the attempted changes.
Annotation, Wills — Alteration After Execution, 24 A.L.R.2d 514 (1952).
This case should not turn on a distinction that is at best very unclear. The intent to amend by substitution can never exist in the absence of an intent to revoke the prior testamentary scheme. Finding an intent to revoke, we must look to the doctrine of dependent relative revocation to decide the effect of the testatrix’s actions.
II. Whether the doctrine of dependent relative revocation should act to review the cancelled portion of Mrs.. Lyles’ will.
This is the dispositive issue on this appeal. As this Court has explained with regard to dependent relative revocation:
The doctrine is not a substantive rule of law, but is rather a rule of presumed intention.
Thus if the testator by codicil [or physical act], revokes a portion of a prior testamentary instrument and makes a substituted disposition under a mistake of fact or of law with the result that the later disposition is invalid, the prior disposition is revived on the theory that had the testator not been mistaken in his belief he would not have revoked the original gift.
Crosby v. Alton Ochsner Medical Foundation, 276 So.2d 661, 666 (Miss.1973).
The court below found that Mothershed did not rebut the presumption that the testatrix intended the revocation to be effective only if the substituted disposition was valid. In the chancellor’s words:
Now, it is true that you can, as by statute authorized, revoke your will in whole or in part. But the history of this case, the history of the records that are before this Court, and of record, influences the Court that this was an intent on her part to make a substitution and, since she could not do what she did, and since the Court in this state indulges in presumptions — and there is more than one in this *1191 case — the Court cannot ignore the presumption, in effect, that she intended to put or give him something else, and she couldn’t do it. Therefore, what she was taking away from him will have to be given back to him. In effect, it is as if the will were never interlineated, never obliterated, never marked upon.
The intent of the testatrix was a question of fact. Likewise, given that the “doctrine” of dependent relative revocation is a rule of presumed intent, its ultimate applicability is also a question of fact. The standard of review, therefore, is whether the chancellor was clearly and manifestly wrong.
The appellant correctly notes that the presumption embodied in the doctrine may be rebutted by circumstances. Caine v. Barnwell, 120 Miss. 209, 227, 82 So. 65, 66 (1919). Mothershed points to two circumstances that she feels sufficiently rebut the presumption that Mrs. Lyles intended the revocation of the devise to be conditioned on the efficacy of the other changes. The first is the context of the “identity of the parties, their relationship, and the history of the matter.” The argument here is that the intent behind the attempted alteration was to make Moth-ershed the recipient of all of testatrix’s land. Unlike the majority of other cases, intestacy will produce the exact result intended by the failed amendments as to the realty. Thus, the obvious conclusion is that faced with the choice between the old will and intestacy, the testatrix would choose intestacy.
As for Howell, his argument favors a more mechanical application of dependent relative revocation. He quotes holdings from other jurisdictions that indicate that cases involving invalid substitutions will always require application of the doctrine. See e.g., In re Will of Collins, 117 Misc.2d 669, 458 N.Y.S.2d 987 (Sur.1982); Schneider v. Harrington, 320 Mass. 723, 71 N.E.2d 242 (1947). Howell also cites Am.Jur. as follows:
Moreover, the rule is that the striking out or erasing of a clause of a will which occurs as the result of an ineffective attempt to alter the testamentary disposition made by the clause cannot operate as a partial revocation by cancellation or obliteration. Such rule is an application of the doctrine of dependent relative revocation, hereinafter considered, to partial revocation.
79 Am.Jur.2d Wills, § 557 (1962).
This mechanical approach, however, flies directly in the face of this Court’s established commitment to the proposition that dependent relative revocation is a rule of presumed intent rather than a substantive rule of law. See Crosby v. Alton Ochsner Medical Foundation, 276 So.2d 661 (Miss. 1973); Caine v. Barnwell, 120 Miss. 209, 82 So. 65 (1919); cf. Deposit Guaranty Nat. Bank v. Cotten, 420 So.2d 242 (Miss. 1992) (where this court held that revocation of a second will did not revive a prior will which had been revoked by the second will). The central, dispositive issue is whether the chancellor was manifestly wrong in his determination that the circumstances did not rebut the presumption that Mrs. Lyles revocatory intent was conditional.
As mentioned already, the heart of the doctrine of dependent relative revocation is the idea that, given the option, the testator or testatrix would prefer the will as executed over intestacy. The wisdom of this concept is undeniable. There can be no doubt that the vast majority of testators, if provided with the knowledge that their alterations could not be given effect, would opt for the original will as the next best thing. However, under the peculiar facts of this case, Mrs. Lyles would unquestionably have chosen intestacy because it produces the precise result she intended when she attempted the ill-fated changes to her will.
On the facts of this case, the presumed intent embodied in the dependent relative revocation doctrine is rebutted by the specific circumstance that Mothershed is the sole heir-at-law of the testatrix. The chancellor’s error on this fact is manifest. Therefore, the decision is reversed and judgment rendered for the Estate on the issue of revocation of the devise to Howell. *1192 The case is remanded for further action consistent with this opinion.

REVERSED AND JUDGMENT RENDERED FOR THE ESTATE OF LOU ELLA A. LYLES: BENNIE A. MOTH-ERSHED, EXECUTRIX. REMANDED TO TATE COUNTY CHANCERY COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, ROBERTS and SMITH, JJ., concur.

. The statute provides, in relevant part, "A devise so made, or any clause thereof, shall not be revocable but by the testator or testatrix destroying, canceling, or obliterating the same_” (emphasis added).