# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 2000-CA-01779-COA

**THELMA M. HINDERS, JOYCE H. STAMPS AND JOAN H. REINHARD**   **APPELLANTS**

**v.**

**JOYCE LYNNE HINDERS**                                                               **APPELLEE**

| | |
|---|---|
| DATE OF TRIAL COURT JUDGMENT: | 09/22/2000 |
| TRIAL JUDGE: | HON. GAIL SHAW-PIERSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | LEM G. ADAMS III |
| | GREGORY MOREAU JOHNSTON |
| ATTORNEY FOR APPELLEE: | ANSELM J. MCLAURIN |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| TRIAL COURT DISPOSITION: | DEVISE TO EX-WIFE UPHELD, WILL ADMITTED TO PROBATE |
| DISPOSITION: | AFFIRMED - 01/08/2002 |
| MOTION FOR REHEARING FILED: | 1/22/2002; denied 3/19/2002 |
| CERTIORARI FILED: | 4/1/2002; granted 6/27/2002 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, C.J., LEE, AND CHANDLER, JJ.

McMILLIN, C.J., FOR THE COURT:

¶1. Thelma Hinders, Joyce Stamps, and Joan Reinhard, the heirs at law of John Hinders, deceased, have appealed a decision of the Chancery Court of Madison County upholding the validity of a will executed by John Hinders leaving his entire estate to the appellee, Joyce Hinders. The appellants, hereafter referred to as "the heirs at law" for sake of clarity, have claimed the will was revoked because John Hinders and Joyce Hinders, who were married at the time the will was executed, were subsequently divorced and entered into a property settlement agreement that resolved all property rights existing between them. We affirm the chancellor's decision upholding the validity of the will.

## I.

### Facts

¶2. In1993, John and Joyce Hinders created wills leaving everything to each other. The parties were later divorced on the grounds of irreconcilable differences. The divorce was finalized in August of 1995 and included a complete property settlement agreement. There was no provision mentioning the wills in the

property settlement agreement. Mr. Hinders died from an aneurism in February 1999 without ever canceling his 1993 will or executing a new will.

¶3. The day after his death, Mrs. Hinders filed her ex-husband's will for probate and began efforts to liquidate his estate. Mr. Hinders' mother and two of his sisters filed suit to intervene, as heirs at law, alleging that the will had been revoked by the divorce and property settlement. After a bench trial, the chancellor determined that the will was valid.

## II.

### Automatic Revocation

¶4. The heirs at law urge this Court to follow precedent in other states to establish a bright line rule that a divorce accompanied by a property settlement agreement automatically revokes either spouse's pre-divorce will - at least insofar as that will makes provision for the other spouse on terms inconsistent with the terms of the property settlement agreement. It is evident that this is not presently the law in our state. Rather than treat that factual situation as an automatic revocation, the Mississippi Supreme Court has simply weighed those facts, along with others deemed relevant by the court, to discern whether there was an implied revocation of the will. *Rasco v. Estate of Rasco,* 501 So. 2d 421, 423 (Miss. 1987). This Court, sitting as an intermediate appellate court, finds itself bound by precedent established in the opinions of the Mississippi Supreme Court. If a new rule of law providing for automatic revocation under these circumstances is to be adopted in this state, it must be accomplished by our supreme court.

## III.

### Implied Revocation

¶5. Alternatively, the heirs at law argue that the chancellor erred in concluding that the fact of the property settlement agreement followed by several years of separation by the parties, combined with the fact that both parties entered into subsequent romantic relationships, was not sufficient evidence to conclude that Mr. Hinders's true intention was to revoke his prior will as a part of the divorce. Mississippi case law has long recognized that, beyond the statutory means of canceling an existing will, certain factual situations may arise that would establish a clear intention of the testator to revoke such an instrument. *In re Estate of Cannon*, 733 So. 2d 245, 248 (¶13) (Miss. 1999); *Estate of Lyles*, 615 So. 2d 1186, 1188 (Miss. 1993).

¶6. In *Rasco,* the supreme court established that it was appropriate to inquire into the post-divorce conduct of the testator to shed light on the testator's intentions regarding a pre-divorce will. The court, in *Rasco*, found that the divorcing parties had continued to live together continuously after an April 1982 irreconcilable differences divorce until Mr. Rasco's death in late November of that year. *Rasco,* 501 So. 2d at 422. The *Rasco* court, cited *Matter of Will of Palmer,* 359 So. 2d 752 (Miss. 1978), for the proposition that evidence of an implied revocation must be "clear and unequivocable," and gave substantial weight to this post-divorce cohabitation as not showing the kind of severance of the relationship that would plainly evidence an intent to revoke any prior testamentary dispositions favorable to the former spouse. *Rasco,* 501 So. 2d at 424.

¶7. In this case, the evidence concerning the relationship of the parties after the divorce was more mixed than in *Rasco.* There was, as we have observed, the fact that both parties had entered into romantic relationships with other people after the divorce. However, there was also evidence that Mr. Hinders

continued to assist his wife in certain aspects of her business affairs, that he was in the habit of personally delivering alimony checks for the purpose, according to some witnesses, of checking on his former wife's well-being, that he expressed continuing emotional feelings for his former wife, and that he had indicated to at least one witness that he would always see to his former wife's welfare. The fact is undisputed that Mr. Hinders held the will in his desk drawer for a number of years after the divorce, where it was readily at hand, and that, besides not formally revoking or destroying the will or executing a new will, he had left his former wife with signatory powers over his checking account and left her as the beneficiary of a retirement fund.

¶8. The heirs at law point to language in the agreement making reference to rights existing in Mrs. Hinders that would survive Mr. Hinders's death and remain binding on his estate as evidencing an intention to revoke any previously-existing rights to the same assets created by the prior will. We do not think this argument, though certainly it is a factor that might be considered along with all other evidence bearing on the question, is of sufficient weight to carry the day. By making certain provisions for Mrs. Hinders in the property settlement agreement that would, in all cases, bind his estate, Mr. Hinders effectively set an outer limit on his ability to dispose of his estate to persons other than Mrs. Hinders. However, that willingness to limit his discretion no matter how the parties' post-divorce relationship unfolded does not, in our view, necessarily negate the proposition that Mr. Hinders continued to possess the unrestrained right to favor his former wife with devises or bequests under his will that he was under no legal obligation whatsoever to provide.

¶9. There was competing evidence presented that would indicate a more complete end to the relationship and counsel for the heirs at law argues forcefully for interpretations of the existing evidence that would be consistent with an intention or understanding on Mr. Hinders's part that the divorce and property settlement agreement ended any claim Mrs. Hinders might be able to make on his estate in the event of his death. However, in those instances where there is a conflict in the evidence, it is the chancellor's duty, sitting as finder of fact, to assess the evidence and determine what weight and worth to give it. *Cain v. Cain*, 795 So. 2d 614, 617 (¶7) (Miss. Ct. App. 2001). So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this court may not intercede simply to substitute our collective opinion for that of the chancellor. *Bower v. Bower*, 758 So. 2d 405, 412 (¶33) (Miss. 2000). Rather, it is our duty in those circumstances to affirm.

¶10. After a full review of the evidence, we cannot say with the conviction necessary to override the judgment of the chancellor that she was wrong in determining that the facts of this case did not constitute a clear and unequivocal showing that Mr. Hinders intended, by the act of obtaining a divorce under the terms of the property settlement agreement, to revoke his prior testamentary disposition of his estate to Mrs. Hinders.

¶11. The mere fact that, in a purely statistical sense, many marriages that end in divorce may do so with enough acrimony to make the prospect of an unanticipated posthumous gift from a former spouse something beyond reasonable comprehension does not necessarily mean that it cannot happen. In this case, Mr. Hinders continued some form of relationship with his former wife, apparently expressed some concern for her future economic well-being, and held a duly-executed and readily-available will in his desk drawer for some four years after the divorce without making any effort during that time to cancel that will or to execute a new one making an alternate disposition of his estate. In those circumstances, we cannot say that the chancellor was manifestly in error in finding that there had been no implied revocation of the prior will.

## IV.

### Breach of Contract

¶12. Lastly, the heirs at law suggest that, by attempting to take under the will, Mrs. Hinders breached the provisions of the contract created by the property settlement agreement that it constituted a full and final settlement of all property rights or claims of support previously existing between the parties. We find this claim without merit. Mrs. Hinders's rights under the will are in the nature of a gift from Mr. Hinders, which during the entire period of his life from the time of the divorce until the time of his death, he had an absolute right to revoke by the simple act of canceling the will. There is no provision in the property settlement, nor would it appear that such a provision could be enforced, that would prevent a divorcing wife from accepting any form of gift or similar voluntary transfer of property from her former husband that the husband desired to make in the free exercise of his own discretion.

¶13. **THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLANTS.**

**KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. BRIDGES, J., NOT PARTICIPATING.**